IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RICKIE A. MILLER**, | Case No. 6:21-cv-1803-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CITY OF EUGENE**, *et al.*, | |
| Defendants. | |

Rickie A. Miller, Plaintiff, *pro se*.

Benjamin J. Miller, Eugene City Attorney's Office, 101 West 10th Ave., Suite 203, Eugene, OR, 97401. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Rickie A. Miller brings two claims under 42 U.S.C. § 1983[1] against the City of

Eugene (City), the Eugene Police Department (Police Department), Det. Anne McIntyre, and

Police Chief Chris Skinner, alleging violations of Plaintiff's civil rights under the Fourth and

---

[1] Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute . . . custom, or usage of any State . . . subjects or causes to be subjected, any . . . person with the jurisdiction of [the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Fourteenth Amendments.[2] Plaintiff's claims arise from alleged events related to his arrest and criminal trial, in which he was convicted of first-degree rape, attempted first-degree sodomy, and first-degree sodomy. *State v. Rickie Allen Miller*, Lane County Circuit Court Case No. 19CR15728.

In Claim One, Plaintiff alleges that Det. McIntyre searched (or attempted to search)[3] Plaintiff's cell phone in violation of the Fourth and Fourteenth Amendments. Plaintiff also seeks to hold the City and Police Department liable for Det. McIntyre's alleged actions. In Claim Two, Plaintiff alleges that Det. McIntyre committed perjury in state court during a pretrial hearing on a motion for severance, also in violation of the Fourth and Fourteenth Amendments. Plaintiff asserts that the City, the Police Department, and Chief Skinner are also liable for McIntyre's alleged perjury because of their failure to train and supervise Det. McIntyre.

Defendants moved for summary judgment, arguing that the *Rooker-Feldman* doctrine bars this Court's jurisdiction over Plaintiff's claims; that Defendants are protected from liability under the doctrines of qualified and absolute immunity; and that Plaintiff has not met his burden to prevail on his claims of supervisory liability against the City, the Police Department, or Chief Skinner. On June 28, 2023, the Court issued an Order to Show Cause why the Court should not *sua sponte* dismiss Plaintiff's first claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court also directed Plaintiff to show cause why the Court should not deny as futile Plaintiff's motion for reconsideration of the Court's earlier denial of Plaintiff's motion for

---

[2] Plaintiff does not assert an independent Fourteenth Amendment claim. The Court understands Plaintiff to invoke the Fourteenth Amendment only because the Fourth Amendment's protections apply against the states by way of "incorporation" through the Fourteenth Amendment's Due Process Clause. *See Duncan v. Louisiana*, 391 U.S. 145, 147-48 (1968).

[3] As discussed below, Plaintiff's allegation is not entirely clear from the Complaint.

leave to file an amended complaint. Finally, the Court reminded Plaintiff that even if he could overcome the apparent deficiencies rendering amendment of his Complaint futile, he must comply with all applicable requirements of local and federal rules of procedure. Plaintiff filed a response to the Order to Show Cause, and a proposed amended complaint. Plaintiff later filed a motion for appointment of counsel.

For the reasons discussed below, the Court: (1) grants Defendants' motion for summary judgment on Claim Two under the *Rooker-Feldman* doctrine; (2) grants summary judgment in favor of Defendants on Claim One, but does so *sua sponte* on different grounds than those raised by Defendants; (3) denies Plaintiff's motion for reconsideration of his motion for leave to file an amended complaint; and (4) denies Plaintiff's motion for appointment of counsel.

## STANDARDS

### A.  Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

When a plaintiff asserts a claim "upon which no relief could be granted by the district court[,] Rule 12(b)(6) provides the vehicle for dismissal of [that claim] . . . for 'failure to state a claim upon which relief can be granted.'" *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (quoting Fed R. Civ. P. 12(b)(6)). A complaint fails to state a claim when there is no cognizable legal theory, or the factual allegations are insufficient to support a claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, however, the complaint must do more than simply allege legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The

plaintiff "may not simply recite the elements of a cause of action, but must [provide] sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "The factual allegations that are taken as true must *plausibly* suggest an entitlement to relief." *Id.* (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

"A trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6)." *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). Where the court determines that a plaintiff "cannot possibly win relief," "[d]ismissal under Rule 12(b)(6) is . . . proper." *Seismic Reservoir 2020*, 785 F.3d at 336.

## B. Summary Judgment, Fed. R. Civ. P. 56(a)

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," on a motion for summary judgment the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

## C. *Pro Se* Pleading Standard

A court must liberally construe the filings of a self-represented (*pro se*) plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

The Ninth Circuit instructs that "an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). For a *pro se* inmate, however, courts "should avoid applying summary judgment rules strictly." *Id*. That rule "exempts *pro se* inmates from *strict* compliance with the summary judgment rules, but it does not exempt them from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (emphasis in original). The exception for *pro se* inmates "do[es]

not entirely release [an inmate] from any obligation to identify or submit some competent evidence supporting his claim." *Id.*

### D.  Motion for Appointment of Counsel

Generally, there is no constitutional right to counsel in a civil case. *United States v. 30.64 Acres of Land*, 795 F.2d 796, 801 (9th Cir. 1986). The Court has discretion, however, under 28 U.S.C. § 1915(e) to appoint volunteer counsel for indigent civil litigants in exceptional circumstances. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009); *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). Although the Court may appoint volunteer counsel in exceptional cases, it has no power to make a mandatory appointment. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 301-08 (1989).

In determining whether exceptional circumstances exist, a court evaluates the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his or her claim *pro se* in light of the complexity of the legal issues involved. *Palmer*, 560 F.3d at 970; *Agyeman*, 390 F.3d at 1103. However, "[n]either of these factors is dispositive and both must be viewed together before reaching a decision on request of counsel under [former] section 1915(d)." *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

## PROCEDURAL HISTORY

### A.  Plaintiff's Complaint

On December 9, 2021, Plaintiff filed a Complaint asserting two claims against Defendants. ECF 1. In Claim One, Plaintiff alleges: "On 4/20/21, Detective Anne McIntyre took possession of my cell phone which was and is in the Eugene Police Department's custody. Det. McIntyre attempted to extract the content of my cell phone. And I am not certain if she was or was not able to do so." ECF 1 at 6. According to Plaintiff, Det. McIntyre "took possession of

[Plaintiff's] phone and conducted a search of it without obtaining a warrant to do so." *Id.* Plaintiff further alleges that it was "[t]he policy, practice[,] and custom" of the City and the Eugene Police Department, "of searching phones without warrants," and that Chief Skinner's "failure to train and supervise Detective McIntyre" caused the alleged violation of Plaintiff's rights. *Id.*

In Claim Two, Plaintiff alleges that in September 2021, "Detective Anne McIntyre committed perjury . . . under oath at a [hearing on a] Motion for Severance" in Plaintiff's criminal case. *Id.* at 7. Plaintiff further alleges that the City of Eugene, the Police Department, and Chief Skinner's "failure to train and supervise" Det. McIntyre "caused the [resulting] violation of Plaintiff's Fourth and Fourteenth Amendment [rights]." *Id.*

## B. Plaintiff's Motion for Leave to Amend

On January 17, 2023, Plaintiff filed a Motion for Leave to File Amended Complaint (ECF 27). In that motion, Plaintiff sought to add Det. Hall as a defendant. According to Plaintiff, Det. McIntyre "handed over Plaintiff's cell phone to Det. Hall without a search warrant and hook [*sic*] it up, in order to withdraw text messages." ECF 27 at 1. On February 27, 2023, the Court denied Plaintiff's motion on procedural grounds, for failing to file a copy of the proposed amended complaint and serve a copy of the motion on Defendants. *See* ECF 35. Plaintiff moves for reconsideration of the Court's denial (ECF 38). Plaintiff asserts that he did not receive a copy of Defendant's motion for summary judgment until the Court provided him with it on March 14, 2023, and that the lack of service of his motion for reconsideration should not be dispositive. ECF 38 at 1-2. He also explains that he lacks funds to make copies. *Id.* at 2.

On July 21, Plaintiff filed a copy of his Proposed Amended Complaint (ECF 46), in which he alleges that Det. McIntyre "took possession of Plaintiff's cell phone from the Police

Department in order to conduct a warrantless search[,] and later had Defendant Ben Hall attempt

another warrantless search which Plaintiff learned of recently." ECF 46 at 3.

### C.  Defendants' Motion for Summary Judgment

On February 21, 2023, Defendants filed the pending Motion for Summary Judgment

(ECF 30). Defendants argue that the Court should grant summary judgment because:

(1) Plaintiff's claims are barred by the *Rooker-Feldman* doctrine;[4] (2) Det. McIntyre is entitled

to qualified immunity for Plaintiff's first claim; (3) Det. McIntyre is entitled to absolute

immunity for Plaintiff's second claim; (4) the failure-to-train claims against the City of Eugene[5]

fail because there are no policies or practices as Plaintiff alleges; and (5) the supervisor liability

claims against Chief Skinner fail because he did not fail to train officers in the manner Plaintiff

alleges. The Court extended Plaintiff's response deadline until April 24, 2023. Plaintiff's

response (ECF 42) is signed April 24, 2023. It was belatedly filed with the Court on May 19,

2023, but Defendants received a copy on May 1, which they attached to their Reply in Support of

Motion for Summary Judgment (ECF 41), filed May 5. The Court assumes there was a delay in

transit and accepts Plaintiff's response as timely.

### D.  Order to Show Cause

On June 28, 2023, the Court issued its Order to Show Cause (ECF 43). The Court

explained that an *attempt* to search a cell phone is not sufficient to support a claim under the

Fourth Amendment. ECF 43 at 4-5. The Court directed Plaintiff to show cause, in writing, why

the Court should not: (1) *sua sponte* dismiss Claim One under Rule 12(b)(6); and (2) deny as

---

[4] The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[5] Defendants argue that the claims against the Police Department fail because it is not a person or entity against which claims may be asserted and that those claims must instead be asserted against the City of Eugene.

futile Plaintiff's motion for reconsideration of his motion for leave to file an amended complaint, because the proposed new allegation was that Det. McIntyre directed Det. Hall to *attempt* a warrantless search, not that Det. Hall searched Plaintiff's phone. *Id.* at 6. On July 21, 2023, Plaintiff filed a response (ECF 47), and a copy of his proposed amended complaint (ECF 46).

### E.  Motion for Appointment of Counsel

On August 8, 2023, Plaintiff filed a Motion for Appointment of Counsel (ECF 49). Plaintiff asserts that he is entitled to counsel because the issues in the case are "complex"; he has limited knowledge of the law; he is indigent and unable to afford an attorney; he has limited ability to investigate his claims; and he believes that Defendants have breached their discovery obligations because they have not complied with the initial disclosure requirement of Rule 26(a)(1)(A).[6]

**DISCUSSION**

### A.  *Rooker-Feldman*

#### 1.  Legal Standards

Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction to hear cases that amount to collateral attacks on state court judgments. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1142-43 (9th Cir. 2021). The basic premise of the doctrine is that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). The doctrine bars de facto appeals from a state court decision and "any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Id.* at 1158 (citing

---

[6] The Court notes that under Rule 26(a)(1)(B)(iv) of the Federal Rules of Civil Procedure, proceedings brought by self-represented prisoners are exempt from the initial disclosure requirements of Rule 26(a)(1)(A).

*Feldman*); *see also Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) (explaining that the "inextricably intertwined" test "is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step" in the analysis, such that the *Rooker-Feldman* inquiry ends if an action does not contain a forbidden de facto appeal). A claim is "inextricably intertwined" with a state court judgment if the federal claim can succeed only to the extent that the state court wrongly decided the issues before it, *Doe & Assocs. Law Offs. v. Napolitano*, 252 F.3d 1026, 1029-30 (9th Cir. 2001), or "where the relief requested in the federal action would effectively reverse the state court decision or void its ruling," *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012) (quotation marks omitted). "In contrast, where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Noel*, 341 F.3d at 1163.

Rooker-Feldman bars a district court from exercising subject-matter jurisdiction only when "the losing party in state court filed suit in federal court after the state proceedings ended." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). The Ninth Circuit has explained that proceedings "end" for *Rooker-Feldman* purposes "when the state courts finally resolve the *issue* that the federal court plaintiff seeks to relitigate in a federal forum, even if other issues remain pending at the state level." *Mothershed v. Justs. of Sup. Ct.*, 410 F.3d 602, 604 n.1 (9th Cir. 2005) (emphasis added) (construing *Exxon*).

## 2. Application

As to Claim One, Plaintiff does not seek to "relitigate" an issue "finally resolved" by the state court. *See id*. Plaintiff did not allege during his criminal trial that an illegal search of his phone took place, nor did that court rule on that issue.[7] Under Claim One, Plaintiff does not

---

[7] The only apparent reference to a search of Plaintiff's phone occurred after the state court announced its verdict. At that point, Plaintiff asked simply whether the state court had

assert that any decision made by the state court was erroneous, nor does he seek relief from that court's judgment. *See Noel*, 341 F.3d at 1166 (when the plaintiff "sought to litigate claims that were related to claims that had already been litigated," court concluding that *Rooker-Feldman* nonetheless did not apply because the plaintiff "neither asserted as a legal wrong an allegedly erroneous decision by the state court in the earlier state court litigation nor sought relief from the state court judgment"). Nor is the issue of whether a search of Plaintiff's phone took place "'inextricably intertwined' with an issue resolved by the state court" during the criminal proceeding: Plaintiff's Fourth Amendment claim could succeed in this Court even if the state court correctly decided all the issues before it. *See id.* at 1154; *see also Doe & Assocs.*, 252 F.3d at 1029-30. For Claim One, Plaintiff "does not complain of a legal injury caused by a state court judgment"; instead, he complains only of "a legal injury caused by an adverse party." *See Noel*, 341 F.3d at 1163. Accordingly, *Rooker-Feldman* does not bar this Court's jurisdiction over Claim One.

As for Claim Two, however, the Court finds that Plaintiff effectively seeks to set aside the state court's judgment in his criminal case, and that *Rooker-Feldman* therefore bars this Court's jurisdiction over that claim.[8]  Plaintiff asks this Court to "declare that Detective

---

authorized Det. McIntyre "to get into [Plaintiff's] phone without a warrant"; the Court explained that it had not authorized—and would never have authorized—Det. McIntyre to do so. *See* ECF 31-3 at 77 (Tr. at 2226:3-21). As discussed below, during his criminal trial Plaintiff had affirmatively sought to access messages on his cell phone as part of discovery; it appears to have been undisputed that the phone was password protected and that the officers were therefore unable to access its contents.

[8] With respect to the narrow issue of whether Det. McIntyre committed perjury during the state court criminal proceedings, the Court finds that the issue is "finally resolve[d]" for purposes of *Rooker-Feldman*—even though "other issues remain pending at the state level." *See Mothershed*, 410 F.3d at 604 n.1. Although Plaintiff has appealed his criminal conviction to the Oregon Court of Appeals, he has raised only issues of law involving Oregon statutes and state criminal procedure. *See generally* Appellant's Opening Br. and Excerpt of R., *State v. Rickie Allen Miller*, No. A179443 (Or. Ct. App. May 30, 2023).

McIntyre lied under oath." The Court agrees with Defendants that by challenging the veracity of

Det. McIntyre's testimony, Plaintiff is "essentially inviting direct district court review of the

evidence supporting [Plaintiff's] conviction and a rejection of that judgment"—in other words,

that Claim Two involves an impermissible de facto appeal of a state court judgment. A

credibility determination by this Court about one of the police officers whose testimony helped

convict Plaintiff in the state criminal proceeding would necessarily involve an issue "inextricably

intertwined" with the state court's judgment.[9] *See Murphy v. JP Morgan Chase*, 2011

WL 6122642, at *4 (S.D. Ohio Dec. 8, 2011) (concluding that arguments that a loan officer

committed fraud and perjury in a state foreclosure proceeding was "inextricably intertwined with

the foreclosure proceedings and constitute arguments that the state court was wrong in entering

judgment" and thus foreclosed by *Rooker-Feldman* doctrine); *Read v. Zugibe*, 2011

WL 1642049, *1 (S.D.N.Y. 2011) (concluding, where the plaintiff alleged that "his conviction

was procured through perjury and the falsification of documents by the police and prosecutors,"

that jurisdiction was lacking under the *Rooker-Feldman* doctrine); *Dauven v. Oregon*, 2001 WL

34736645, at *5 (D. Or. May 18, 2001) ("Although not styled as an appeal from that judgment, it

is difficult to see how this court could grant any relief to plaintiffs without first determining that

the state court judgment was erroneous. For instance, if plaintiffs were able to prove that Officer

15573 gave false testimony, plaintiffs would be entitled to compensation only if injury resulted

from the perjured testimony, namely, a wrongful conviction. This court could not grant relief

without declaring the conviction invalid, which is precisely what the *Rooker-Feldman* doctrine

---

[9] Plaintiff directly raised the issue of McIntyre's credibility in the state court. *See*
ECF 31-3 at 55-57 (Tr. at 1010:5 - 1012:9).

PAGE 12 – OPINION AND ORDER

prohibits this court from doing."), *aff'd*, 44 F. App'x 255 (9th Cir. 2002); *cf. Noel*, 341 F.3d

at 1154. The *Rooker-Feldman* doctrine therefore bars this Court's jurisdiction over Claim Two.[10]

---

[10] Even if *Rooker-Feldman* did not bar this Court's jurisdiction over Claim Two, that claim would not survive summary judgment as to any Defendant. First, § 1983 does not authorize a convicted defendant to assert a claim against a police officer for perjurious testimony given by that officer at the defendant's criminal trial. *Briscoe v. LaHue*, 460 U.S. 325, 340-45 (1983); *accord Paine v. City of Lompoc*, 265 F.3d 975, 981 (9th Cir. 2001) (citing *Briscoe*). The "absolute immunity" for testimony of government officials given in judicial proceedings extends to testimony given at pretrial proceedings. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). Plaintiff therefore cannot bring a § 1983 claim against Det. McIntyre based on the allegation that she committed perjury in the state court criminal proceeding.

Second, even if Det. McIntyre committed perjury, Plaintiff's allegations would not satisfy the applicable, stringent standard for a failure-to-train claim, which Plaintiff brings against the City, the Police Department, and Chief Skinner based on McIntyre's allegedly perjurious testimony. For a claim against a municipal actor, "[t]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A plaintiff bringing such a claim must demonstrate a "'deliberate' or 'conscious' choice" by the municipality—*i.e.*, a "policy." *Id.* When an official is sued in his individual capacity for an alleged failure to train a subordinate, the same standard applies. *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51 (2011)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train"; an exception applies if "the unconstitutional consequences of failing to train" were "patently obvious." *Connick*, 563 U.S. at 62, 64.

Plaintiff does not present evidence of a pattern of perjurious statements made by officers of the Police Department—let alone a pattern that would have put the City, the Police Department, or Chief Skinner on notice that a course of training was deficient in a particular respect. *See Flores*, 758 F.3d at 1159. Nor does Plaintiff's failure-to-train claim fall within the "narrow range of circumstances" in which the consequences of a failure to train are so "patently obvious" that Plaintiff need not establish such a pattern. *See Connick*, 563 U.S. at 64. Where an officer's alleged act involves a violation of a well-known law, "[t]here is no basis from which to conclude that the unconstitutional consequences of failing to train police officers not to commit [the offense] are so patently obvious that the [municipality] or [individual supervisor] were deliberately indifferent." *Flores*, 758 F.3d at 1160. Well-known laws include those that criminalize perjury. *See Walker v. City of New York*, 974 F.2d 293, 299-300 (2d Cir. 1992) ("not to commit the crime of perjury . . . is obvious to all"), *cited with approval in Flores*, 758 F.3d at 1160.

Plaintiff has not provided evidence that the City, the Police Department, or Chief Skinner were aware of a pattern of perjury by police officers, nor is there any reasonable basis for concluding that an experienced law enforcement officer such as Det. McIntyre would be unaware

Accordingly, the Court grants summary judgment in favor of Defendants on Claim Two, and considers only whether Claim One should be dismissed *sua sponte* under Rule 12(b)(6) or whether, in the alternative, the Court should grant summary judgment on that claim in favor of Defendants under Rule 56.

## B.  Unlawful Search in Violation of the Fourth Amendment

As discussed, Plaintiff brings Claim One against Det. McIntyre based on Plaintiff's allegation that Det. McIntyre searched (or attempted to search) Plaintiff's cell phone while it was in the custody of the Police Department. Plaintiff also seeks to hold the City and Police Department liable for Det. McIntyre's alleged actions.

### 1.  Legal Standards

When no actual search occurs, there is no violation of the Fourth Amendment's protection against unreasonable searches. *See, e.g.*, *Quinonez v. United States*, 2023 WL 3607964, at *6-7 (N.D. Cal. Apr. 3, 2023) (finding that the "plaintiffs have not plausibly shown a Fourth Amendment violation" where the complaint "only speculates that a search occurred" and does not "show that a search in fact occurred"); *Edwards v. MiraCosta Coll.*, 2017 WL 2670845, at *7 (S.D. Cal. June 20, 2017) (dismissing the plaintiff's Fourth Amendment claim where he alleged that campus police officers "'attempted to search' [his] phone[,] not that they did, indeed, search the phone" and therefore concluding that the plaintiff "fail[ed] to allege sufficient facts to state a claim for an unreasonable search"); *cf. May v. Baldwin*, 895 F. Supp. 1398, 1405 (D. Or. 1995) (holding that the plaintiff "lacks standing to assert a Fourth

---

that perjury is a crime. Accordingly, even if *Rooker-Feldman* did not bar this Court's jurisdiction over Claim Two, and even if Plaintiff established the Det. McIntyre committed perjury, Plaintiff's failure-to-train claims against the City, the Police Department, and Chief Skinner would not survive summary judgment.

Amendment violation" because "no search was conducted"), *aff'd*, 109 F.3d 557 (9th

Cir. 1997)). If no search of Plaintiff's phone actually took place, Plaintiff's first claim fails.

### 2.  Dismissal Under Rule 12(b)(6)

As the Court explained in its Order to Show Cause, an allegation of a "mere attempt to

conduct a search . . . fails to state a claim for an unreasonable search under the Fourth

Amendment." ECF 43 at 4 (collecting cases). It is unclear whether Plaintiff intends to allege that

an actual search of his phone occurred, or that officers merely *attempted* that search. Plaintiff's

complaint states that Det. McIntyre "took possession of [Plaintiff's] phone and conducted a

search of it." Defendant also asserts in his complaint, however, that "Det. Detective McIntyre

attempted to extract the content of my cell phone. And I am not certain if she was or was not able

to do so." These allegations could mean that Det. McIntyre searched Plaintiff's cell phone but

was unable to *extract* data, or could mean that Det. McIntyre merely *attempted* to search

Plaintiff's cell phone.

In Plaintiff's response to Defendants' summary judgment motion, he clarified that he did

*not* allege in his complaint that an actual search occurred: "*I never said she searched my phone.*

The complaint is [that she] *attempted* to search my phone." ECF 42 at 1 (emphasis added).

Plaintiff further states in his response: "The technology the cops didn't have was access to [*sic*]

bypass my password when they hooked it up and *tried*." *Id.* (emphasis added). Similarly, in his

proposed amended complaint, Plaintiff states only that Det. McIntyre "took possession of

Plaintiff's cell phone . . . *in order to conduct* a warrantless search[,] and later had [Det.] Hall

*attempt* another warrantless search." ECF 46 at 3 (emphasis added).

In Plaintiff's response to the Order to Show Cause, however, he states that his complaint

"describes [that] Defendant McIntyre took possession *and conducted a search of* Plaintiff's

phone." Plaintiff's allegations are unclear and he has been inconsistent in his explanations. It

appears likely that his allegation that Det. McIntyre "conducted" a search of his phone means that she merely attempted to do so. Given the lack of clarity, however, the Court construes Plaintiff's claim liberally and affords him the benefit of any reasonable doubt, and therefore declines to resolve Plaintiff's claim in the context of Rule 12(b)(6). Instead, the Court will consider this claim in the context of Rule 56.

### 3. Summary Judgment under Rule 56

#### a. *Sua Sponte* Consideration

District courts may grant summary judgment in the absence of a formal motion if the party against whom judgment is entered has had "a full and fair opportunity to develop and present facts and legal arguments in support of its position." *Portsmouth Square Inc. v. S'holders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985). A litigant must be provided "reasonable notice that the sufficiency of [the] claim will be in issue." *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993). "Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment." *Portsmouth Square*, 770 F.2d at 869. *See also* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant [a summary judgment] motion on grounds not raised by a party; or . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.").

Defendants have not moved for summary judgment on the ground that there was no actual search of Plaintiff's cell phone. The Court's Order to Show Cause explained, however, that the sufficiency of Plaintiffs first claim was at issue and set forth the specific grounds for the potential insufficiency: it appeared Plaintiff did not allege that an actual search took place, and if no search occurred, Plaintiff could not bring a § 1983 claim for a Fourth Amendment violation. ECF 43 at 4-5. And in moving for summary judgment on Plaintiff's first claim based on the

doctrine of qualified immunity, Defendants directly raised the same factual issue and addressed it, explaining in their motion—supported by a sworn declaration and trial transcripts—that Plaintiff's phone was password protected and therefore could not be searched. *See, e.g.*, ECF 30 at 2 ("In response to plaintiff's *pro se* motion for access to messages on his cell phone as part of discovery, the state simply plugged the phone in to determine whether it could hold a charge. The phone was password protected and could not be searched. . . . No search was conducted[.]"); *id.* at 4 (similar); *see also* ECF 33 at 2 (McIntyre Decl.) ("The home screen of the cell phone . . . indicated it was password protected. . . . At no point was a search of the phone conducted."); ECF 31-3 at 71 (Tr. at 2062:8-11) (When Det. McIntyre was asked why officers were unable to access the contents Plaintiff's phone after he made discovery requests for his text messages, she responded: "We do not have the technology, and it had a passcode on it.").

In sum, the Court finds that Plaintiff received adequate notice that the factual sufficiency of his first claim was at issue and the basis for a potential adverse ruling, and finds that he had a full and fair opportunity, in both his response to the Court's Order to Show cause and his response to Defendants' summary judgment motion, to present any facts demonstrating that an actual search occurred. *See Buckingham*, 998 F.2d at 742. Accordingly, the Court considers *sua sponte* whether entry of summary judgment on that basis is warranted.

### b. Analysis

As discussed, Defendants have presented evidence in support of their assertion not only that no search of Plaintiffs phone was attempted, but also that such a search was impossible. Plaintiff does not address Defendants' contention that, because his phone was password protected, the contents of his phone were inaccessible. When a party fails to respond to an asserted fact, that fact may be considered as undisputed. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (construing Fed. R. Civ. P. 56(e) (providing that, when a party fails to

respond to a fact asserted by the movant, a court may "consider the fact undisputed for purposes

of the motion" and "grant summary judgment if the motion and supporting materials—including

the facts considered undisputed—show that the movant is entitled to it")).[11]

Even viewing the evidence in the light most favorable to Plaintiff, the Court finds that

there is no evidence on which a jury could reasonably find for Plaintiff on the question of

whether an actual search occurred. *See Anderson*, 477 U.S. at 255; *see also Soto*, 882 F.3d at 872

(although a *pro se* inmate is exempt from strict compliance with summary judgment rules, he

must nonetheless "identify or submit some competent evidence supporting his claim"); *Marrero*

*v. Ives*, 682 F.3d 1190, 1192-93 (9th Cir. 2012) (construing *pro se habeas* petitioner's filing

liberally but concluding that, because he introduced no evidence in support of a claim of factual

innocence, he "failed to demonstrate that, in light of all the evidence, it is more likely than not

that no reasonable juror would have convicted him" (quotation marks omitted)). Because

Plaintiff has failed to submit evidence to suggest that Det. McIntyre violated his Fourth

Amendment rights, his claim against the City and Chief Skinner for that alleged violation also

fails. Accordingly, the Court grants summary judgment in favor of Defendants on Plaintiff's first

claim.

## C.  Motion for Reconsideration of Motion for Leave to File Amended Complaint

As noted, Plaintiff seeks permission to file an amended complaint that adds Det. Hall as a

defendant. According to Plaintiff, Det. McIntyre "handed over Plaintiff's cell phone to Det.

Hall . . . to withdraw text messages." As the Court explained in its Order to Show Cause,

Plaintiff's proposed changes to his complaint do not appear to allege that Det. Hall actually

---

[11] To the extent that Defendant has addressed that asserted fact, he appears even to concede it. *See* ECF 42 at 4 ("The technology the cops didn't have was access to [*sic*] bypass my password when they hooked it up and tried.").

conducted a search of Plaintiff's phone, nor is there evidence that Det. Hall did so. ECF 43 at 5; *see also* ECF 46 (Proposed Am. Compl.) at 2 (alleging that "[Det.] McIntyre . . . had [Det.] Hall *attempt* another warrantless search" (emphasis added)). Thus, the Court ordered Plaintiff to "explain why the Court should not deny as futile Plaintiff's motion for reconsideration to allow him leave to file an amended complaint in the absence of any allegation or evidence that Det. conducted a search of his phone." ECF 43 at 5.

In Plaintiff's response to the Order to Show Cause, he does not allege that Det. Hall actually conducted a search of his phone; instead, Plaintiff reiterates his allegation that Det. McIntyre transferred Plaintiff's phone to Det. Hall for him to "attempt" a search. As explained above and in the Order to Show Cause, an allegation of an attempted search is insufficient to state a claim for a violation of Plaintiff's Fourth Amendment rights. Because Plaintiff's proposed amended complaint fails to state a Fourth Amendment claim for an unreasonable search against Det. Hall, it would therefore be futile for Plaintiff to file an amended complaint that adds Det. Hall as a defendant. Accordingly, the Court denies Plaintiff's motion for reconsideration of the Court's order denying his motion for leave to amend.

### D.  Motion for Appointment of Counsel

As discussed, motions for appointment of counsel are granted in exceptional cases, based on a balancing of the plaintiff's likelihood of success on the merits and ability to articulate his claim *pro se* considering the complexity of the legal issues involved.[12] *Palmer*, 560 F.3d at 970;

---

[12] To the extent that Plaintiff asserts that he should be appointed counsel because he is indigent and unable to afford counsel, the Court notes that inability to afford counsel is not, standing alone, a sufficient basis on which to grant his motion—it is simply a prerequisite. *See* 28 U.S.C. § 1915(e)(1); *see also Schroeder v. Hundley*, 2021 WL 1792543, at *1 (S.D. Cal. Mar. 29, 2021) (noting that even if the plaintiff provided the requisite evidence "verifying with some particularity his claim of poverty," he would be entitled to appointment of counsel only if he could establish the requisite "exceptional circumstances" (quoting *Washington v. Rowland*, 29 F.3d 638 at *4 (9th Cir. 1994)).

*Agyeman*, 390 F.3d at 1103. Plaintiff has demonstrated sufficient ability to articulate his claims.

The facts and legal issues involved are not of substantial complexity. In addition, for all the

reasons discussed above, the Court finds that Plaintiff has failed to demonstrate a likelihood of

success on the merits of either of his claims. *Cf. Bailey v. Lawford*, 835 F. Supp. 550, 552 (S.D.

Cal. 1993) (finding no likelihood of success on the merits where plaintiff offered "no evidence

other than his own assertions to support his claims"). The Court therefore finds that there are no

exceptional circumstances that require the appointment of counsel under 28 U.S.C. § 1915(e) at

this time. Accordingly, the Court denies Plaintiff's Motion for Appointment of Counsel

(ECF 49).[13] Nothing in this ruling, however, precludes Plaintiff from accepting representation

from counsel he finds who is willing to represent him *pro bono*.

## CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment (ECF 30). The Court

DENIES Plaintiff's Motion for Reconsideration of Motion for Leave to File Amended Complaint

(ECF 38). The Court DENIES Plaintiff's Motion for Appointment of Counsel (ECF 49).

**IT IS SO ORDERED**.

DATED this 27th day of November, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[13] The second page of Plaintiff's motion is missing from the Court's electronic case management and filing system (CM/ECF) due to Plaintiff's failure to comply with Local Rule 10-1(f), which directs that paper filings must be one sided. The missing argument, however, involves a dispute not material to the Court's ruling on Plaintiff's motion.